# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

| | | |
|---|---|---|
| SPECTRUM BRANDS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:16CV30 HEA |
| | ) | |
| COMPTON'S, LLC et al., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

This diversity case is before the Court on the motion of Plaintiff for summary judgment on all counts of the First Amended Complaint [Doc. No. 54] and Defendants' Motion to Strike Exhibit S-Expert Report of Judith Spry [Doc. No. 60]. Defendant opposes the Motion for Summary Judgment and Plaintiff opposes the Motion to Strike. For the reasons set forth below, summary judgment is granted as to Counts I-IV of the Complaint and denied as moot as to Count V. The motion to strike the expert report of Judith Spy is denied as moot.

## Facts and Background

In 2011, Defendant Compton's LLC ("CLLC") purchased real property located in Macon, Missouri ("Macon Site") which had been contaminated with the hazardous material trichloroethylene ("TCE") incident to the manufacture of small appliances. This contamination occurred before either party to this suit had an

interest in the property. CLLC purchased the Macon Site pursuant to a written contract entitled "2011 Property Transfer Agreement (with Assignment and Assumption of Environmental Liabilities)" ("2011 Agreement"). The 2011 Agreement was executed by Spectrum Brands, Inc. ("Spectrum" or "Plaintiff") and CLLC but was the subject of an amendment in May 2012, identifying Toastmaster, Inc. as the correct seller and assigning Spectrum's rights and obligations to Toastmaster, Inc. However, subsequent to 2011, Toastmaster, Inc. was merged into Spectrum, with Spectrum being the surviving entity.

Under the terms of the 2011 Agreement, CLLC assumed all environmental obligations and agreed to perform all environmental remediation associated with the Macon Site. Defendant Richard Compton ("Compton"), who operates a furniture and appliance liquidation business out on the Macon Site, executed a contemporaneous personal guarantee ("2011 Guaranty") to fulfill CLLC's obligations under the 2011 Agreement if CLLC failed to do so.

In 2015, in response to a demand by the United States Environmental Protection Agency ("EPA") that Spectrum and CLLC address the environmental contamination at the Macon Site, CLLC entered into a second agreement with Spectrum, entitled "Former Macon, Missouri Toastmaster Facility Environmental Work and Indemnity Agreement" ("2015 Agreement"). The 2015 Agreement supplemented, but did not supplant, the 2011 Agreement. Under the 2015

Agreement, CLLC again agreed to perform environmental remediation at the Macon Site. Compton personally guaranteed CLLC's performance under the 2015 Agreement.

Both the 2011 Agreement and the 2015 Agreement acknowledge that Spectrum would have no adequate remedy at law for Defendants' failure to perform the environmental remediation on property that the Defendants own or control, and thus both Agreements expressly state that in the event of a breach Spectrum is entitled to an order for specific performance. Defendants also agreed to indemnify Spectrum for any costs it incurred relating to environmental contamination at the Macon Site.

Before Spectrum acquired an interest in the Macon Site, environmental investigation and remediation was underway, overseen by the Missouri Department of Natural Resources ("MDNR") as part of its Brownfields Voluntary Cleanup Program ("VCP"). Prior to its sale to CLLC, Spectrum maintained the Macon Site in the VCP. Defendants were aware of the environmental conditions on the Macon Site; as part of the 2011 Agreement, CLLC agreed to assume all environmental liability and perform all needed remediation, including continuing the investigation and remediation required by MDNR under the VCP.

As required by the 2011 Agreement, Defendants notified MDNR shortly after their purchase of the Macon Site of the change in ownership and their intent

to assume responsibility under the VCP.  Shortly thereafter, however, Defendants

ceased the ongoing investigation required under the VCP.  As a result, MDNR

terminated the Macon Site from the VCP.  Compton testified during his deposition

that it was his decision to quit testing the wells, a requirement under the VCP.

In May and July 2014, MDNR conducted sampling within the Macon Site

buildings and nearby residences to investigate whether the TCE contamination at

the Macon Site might present a vapor intrusion risk.  MDNR reported its findings

to the EPA, who, in turn, installed vapor mitigation systems in two residences with

elevated levels of TCE.  EPA then demanded that CLLC and Spectrum,

individually or collectively, undertake additional vapor intrusion investigation of

the facility and the surrounding neighborhood.  Spectrum, in turn, and pursuant to

the 2011 Agreement, demanded CLLC complete the actions required by EPA.

To address EPA's concerns, EPA, Spectrum, and CLLC entered into an

Administrative Settlement and Order of Consent ("ASAOC").  The ASAOC

specifies that CLLC undertake the primary role in performing the requirements of

the ASAOC; Spectrum has secondary responsibility under the ASAOC should

CLLC fail to perform.

Concurrent to the ASAOC, Spectrum and Defendants entered into the 2015

Agreement, where CLLC again agreed (and Compton again personally guaranteed)

to "perform and fulfill all obligations required under the ASAOC within the time periods required by the ASAOC."

On February 2, 2016, EPA sent a letter to Spectrum and CLLC notifying them that the Macon Site was out of compliance and directing Spectrum to conduct the work under the ASAOC as a result of CLLC's nonperformance. Spectrum engaged Environmental Resources Management, Inc. and other vendors to further investigate the TCE levels at the Macon Site and the adjacent neighborhood. Defendants have never reimbursed Spectrum for any costs it incurred fulfilling the ASAOC requirements, and unless Defendants perform future remediation required under the ASAOC, EPA will require Spectrum to undertake that remediation as well.

As for Defendants' remediation attempts, CLLC self-installed seven sub-slab blower units in the Compton building and opened doors to increase ventilation. The efforts fell short, and EPA notified Compton on February 16, 2017 that TCE levels within the Compton building were still unacceptable and further mitigation was necessary.

Pursuant to this litigation, Spectrum retained Judith Spry ("Spry") to perform an expert damages analysis and give testimony related to damages in this matter. Spry opined that Spectrum incurred over $1.4 million in damages

regarding the Macon Site, and estimated expected future damages if Defendants failed to perform the required remediation.

Plaintiff seeks redress for the alleged (1) breach of the 2011 Agreement by CLLC and Compton (Count I); (2) breach of the 2015 Agreement by CLLCC and Compton (Count II); (3) breach of the 2011 Agreement against Compton as Guarantor (Count III); and (4) breach of the 2015 Agreement against Compton as Guarantor (Count IV). Plaintiff also seeks a declaratory judgment defining the parties' rights and responsibilities under the 2011 Agreement and 2015 Agreement (collectively, "Agreements") (Count V). Plaintiff seeks summary judgment on these five counts. Defendant seeks to strike Spry's expert report.

## I.    Summary Judgment

Counts I-IV of the Complaint assert breach of contract claims against CLLC and Compton personally (as Guarantor), each, for: (1) failure to perform certain contractual obligations owed under the Agreements and (2) failure to indemnify Spectrum for environmental remediation costs Spectrum incurred when CLLC and Compton failed to perform under the Agreements. Plaintiff moves for summary judgment on Counts I-IV, arguing that the material facts as to the existence of the contracts and the breach thereof are undisputed. Plaintiff's arguments are well taken, and their motion for summary judgment is granted as to Counts I-IV. Count V is denied as moot.

**Summary Judgment Standard**

The Court may grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex,* 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the mere existence of some alleged factual dispute. *Anderson,* 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson,* 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson,* 477 U.S. at 255. The Court's function is

not to weigh the evidence but to determine whether there is a genuine issue for trial. *Id.* at 249.

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.

In order to survive a motion for summary judgment, "the nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (*quoting Putman v. Unity Health Sys.*, 348 F.3d 732, 733–34 (8th Cir. 2003)) (internal quotation marks omitted).

At the summary judgment stage, "a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). When such an objection is made, the burden is on the proponent of the evidence to show that the material is admissible as presented or to explain the admissible form that is anticipated. Rule 56 advisory committee's note. However, the Eighth Circuit has held that it is not an abuse of discretion for a District Court to overrule such an objection when the objecting

party "does not even attempt to argue that the [objectionable materials] could not [be] presented in an admissible form at trial." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012). Moreover, "the standard is not whether the evidence at the summary judgment stage *would* be admissible at trial—it is whether it *could* be presented at trial in an admissible form." *Id*. (emphasis added).

**Breach of Contract**

Under Missouri law, to state a claim for breach of contract, plaintiff "must establish the existence of a valid contract, the rights of plaintiff and obligations of defendant under the contract, a breach by defendant, and damages resulting from the breach." *Gillis v. Principia Corp.*, 832 F.3d 865, 871 (8th Cir. 2016) (quoting *Lucero v. Curators of Univ. of Mo.*, 400 S.W.3d 1, 5 (Mo. Ct. App. 2013). "If the contract is unambiguous, then the intent of the parties is to be gathered from the contract alone, and any extrinsic or parol[] evidence as to the intent and meaning of the contract must be excluded from the court's review." *Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC*, 784 F.3d 1183, 1188 (8th Cir. 2015). (*quoting Lafarge N Am., Inc. v. Discovery Grp LLC*, 574 F.3d 973, 979 (8th Cir. 2009)) (alteration in original).

"Under Missouri law, summary judgment is appropriate [in a contract case] where the language of the contract is clear and unambiguous such that the meaning of the portion of the contract in issue is so apparent that it may be determined from

the four comers of the document." *Id.* (*quoting Deal v.Consumer Programs, Inc.*,

470 F.3d 1225, 1229 (8th Cir. 2006)) (alteration in original).  "The burden of proof

rests with the party claiming breach of contract." *Id*. at 1189 (*quoting Scheck*

*Indus. Corp. v. Tarlton Corp.*, 435 S.W.3d 705, 723 (Mo. App. E.D. 2014)).

## II.    Discussion

### Counts I & II: Breach by CLLC

Defendants does not dispute that the 2011 Agreement is a valid and binding

contract, however, Defendants argue that the contract is between CLLC and

Toastmaster, not CLLC and Spectrum.  This argument, which was not raised

before the summary judgment stage, is a red herring which can only serve to delay

the inevitable.  The 2015 Agreement, which Defendants acknowledge as a valid

contract between CLLC, Compton (as Guarantor), and Spectrum reads that:

> In any future proceeding, whether to enforce this Agreement, the
> Sales Contract [defined as the 2011 Agreement], the Guaranty
> Agreement, or otherwise, CLLC and Compton shall not assert that
> SBI is not entitled to indemnification under the Sales Contract and
> Guaranty Agreement for such Loss and Compton agrees to guarantee
> CLLC's performance of its indemnity obligations.

At the time of the 2015 Agreement, Defendants clearly acted knowing that

Spectrum, not Toastmaster, was the party in interest to the 2011 Agreement.

Moreover, in responding to Defendants' claim that Toastmaster might be the actual

party in interest, Plaintiff attached merger documents from the Florida and

Delaware Departments of State showing Toastmaster's merger into Applica

Consumer Products, Inc., and Applica Consumer Products, Inc.'s merger into Spectrum Brands, Inc., respectively. In both mergers, the documents show, the assets and liabilities of the merging corporation were subsumed by the surviving corporation. There is no real controversy over Spectrum's status as the party in interest to the 2011 Agreement.

CLLC's obligations are unambiguously set forth and acknowledged in the 2011 Agreement whereby CLLC agreed to "assume, pay and be responsible for all Environmental Clean-Up Liability, Claims, [and] Clean-Up Costs . . . associated with the Property." These obligations applied to costs and environmental clean-up which existed at the time of signing the 2011 Agreement as well as those that "hereafter arise," are "imposed," or are "incurred" in the future. Further, "Clean-up" is defined in part as "includ[ing] participation in a state voluntary program governing the investigation and cleanup of Pollution Conditions," referring to the VCP through MDNR. CLLC agreed to "expeditiously perform all Clean-up and pay all Clean-Up Costs required in order to obtain a written determination ("NFA Letter") from [MDNR]." Finally, pursuant to Section 10.1 of the 2011 Agreement, CLLC agreed to indemnify Spectrum from and against all liabilities, claims, and costs relating to its obligations.

CLLC (and Compton as Guarantor) entered into the 2011 Agreement with knowledge that the Macon Site was contaminated with TCE and would require

monitoring and future remediation. CLLC knowingly assumed all environmental

responsibility and agreed that specific performance of these obligations and

indemnification of any costs incurred by Spectrum would result should CLLC

breach the contract.

Similarly, CLLC does not dispute that the 2015 Agreement is a valid and

binding contract, nor does Compton dispute that he singed the 2015 Agreement as

Guarantor. CLLC's obligations are unambiguously set forth in the 2015

Agreement and acknowledged by CLLC. Noting the ASAOC entered into by the

EPA, Plaintiff, and CLLC, the 2015 Agreement obligates CLLC to "perform and

fulfill all obligations required under the ASAOC within the time periods required

by the ASAOC." CLLC knowingly assumed responsibility for performing the

ASAOC and agreed that specific performance of these obligations would result

should CLLC breach the contract. CLLC further agreed that it would indemnify

Spectrum against all costs incurred by Spectrum regarding the ASAOC.

Defendants claim that they are currently engaged in remediation efforts, and

that summary judgment should be denied because "the success of those efforts is

an open question." However, since Defendants purchased the Macon property in

2011, the MDNR terminated the site from the VCP, the EPA became involved, and

the EPA demanded that CLLC complete the actions outlined in the ASAOC, with

Spectrum possessing the secondary obligation of performing under the ASAOC

should CLLC fail to perform. Defendant did not comply with the requirements of the MDNR's VCP. Defendant's current remediation efforts do not fulfill those requirements demanded by the EPA under the ASAOC. Defendant's inaction and non-compliance with directives of environmental agencies is clearly a breach of the Agreements. Spectrum has incurred money damages working toward compliance where CLLC has failed to do so, and will incur more costs if CLLC does not comply with the ASAOC. CLLC has not offered any valid legal defense for its breach nor are there any material facts in dispute that would affect the outcome of the breach of contract claims against CLLC.

The language of the 2011 and 2015 Agreements clearly and unambiguously establish liability on Counts I and II as a matter of law. See *Whittaker v. Kornegay*, 2016 WL 206477 (W.D. Mo. Jan. 15, 2016) (granting summary judgment on the plaintiff's breach of contact claim where the defendant did not dispute the validity of the agreement and defendant failed to pay the monies owed); *Vantage Credit Union v. Chisholm*, 447 S.W.3d 740, 746-47 (Mo. App. E.D. 2014) (same). Accordingly, Plaintiff's Motion is granted as to Counts I and II.

**Counts III & IV: Breach by Compton as Guarantor**

Under Counts III and IV, Spectrum also brings claims against Richard Compton individually, as Guarantor, for breach of the Agreements. Under Missouri law, whether a principal signing an agreement can be personally liable

turns on whether "in view of the form of the signature …, the language of the so called guaranty clause is sufficient to manifest a clear and explicit intent by the [signatory] to assume a personal guaranty contract." *Cardinal Health 110, Inc. v. Cyrus Pharm., LLC*, 560 F.3d 894, 899 (8th Cir. 2009) (internal citations and quotations omitted).

The 2011 Guaranty, signed in connection with the 2011 Agreement, unequivocally states "Guarantor has agreed to guarantee the obligations of [CLLC] pursuant to the [2011 Agreement], including without limitation, the environmental obligations set forth in Sections 9.1, 9.2, and 9.3 thereof." Further, the 2011 Guaranty includes unequivocal statements of individual liability for Compton in Paragraphs 1, 2, and 7.

The 2015 Agreement also unequivocally sets forth the intent of the parties for Compton to act as an individual guarantor to CLLC's obligations. For instance, pursuant to Paragraph 2.1 of the 2015 Agreement, "Compton, as guarantor, agrees to perform and fulfill such obligations [under the ASAOC] should CLLC fail to perform. Compton, as guarantor, also agrees to perform and fulfill all obligations that CLLC has under this Agreement should CLLC fail to perform."

Defendants do not dispute that the 2011 Agreement, 2011 Guaranty, and 2015 Agreement are valid and enforceable contracts. Compton signed the Agreements on behalf of CLLC and also on behalf of himself personally. Under

Missouri law, Compton is individually liable for CLLC's obligations under the Agreements. Because this Court determined that CLLC is liable for breaching the Agreements as outlined in Counts I and II, that liability is equally attributable to Compton personally as Guarantor as a matter of law. Accordingly, Plaintiff's Motion is granted as to Counts III and VI.

**Count V: Declaratory Judgment.**

Spectrum seeks a declaration that the contractual provisions in the Agreements are valid and enforceable and require Defendants to perform remediation and indemnify Spectrum for past remediation costs. *See* Fed. R. Civ. P. 57 (allowing action for declaratory judgment regardless whether there is another adequate remedy). The Court having previously determined that Defendant breached the Agreement, this Count will be dismissed. *See Amerisure Mut. Ins. Co. v. Maschmeyer Landscapers, Inc.,* 2007 WL 2811080, *2 (E.D. Mo. Sept. 24, 2007) ("Adjudication of the breach of contract claim . . . render[s] the request for declaratory judgment moot or redundant ... "). Accordingly, summary judgment on Count V is denied as moot, and Count V is dismissed.

## III. Motion to Strike/Plaintiff's Remedy

Defendants filed a Motion to Strike Exhibit S to Plaintiff's Motion for Summary Judgment. Exhibit S, entitled "Expert Report of Judith Spry" purports to be an expert report on damages authored by Judith Spry, an accounting expert.

Having granted Plaintiff's Motion for Summary Judgment on Counts I-IV without reliance on Exhibit S, this Court will deny Defendant's Motion to Strike as moot.

However, clarification on the issues of Plaintiff's requested relief and damages is necessary. Plaintiff should submit its request for relief to the Court, including proof of damages and affidavits supporting attorney fees and a statement of costs. Defendant should respond to these filings. After consideration thereof, judgment will be entered.

## Conclusion

For the reasons set forth above, summary judgment is entered in favor of Plaintiff on Counts I-IV, summary judgment as to Count V is denied, and Count V is dismissed as moot, and Defendants' Motion to Strike is denied as moot. Final judgment will be entered upon the determination of damages.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. No. 54] is **GRANTED** as to Counts I, II, III, and IV and **DENIED** as moot as to Count V.

**IT IS FURTHER ORDERED** that the motion of Defendants to Strike Exhibit S - Expert Report of Judith Spry [Doc. No. 60] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff shall submit its request for relief to the Court, including proof of damages and affidavits in support of attorney fees and a statement of costs within 10 days of this order.

**IT IS FURTHER ORDERED** that Defendants shall respond to Plaintiff's request for relief and supporting exhibits within 10 days of their submission.

Final judgment to be entered upon determination of damages.

Dated this 21st day of August, 2018.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE